COURT OF APPEALS
DECISION
DATED AND FILED

February 15, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2021AP1477-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF218

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DANIEL D. SEASE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Fond du Lac County: PETER L. GRIMM, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Daniel D. Sease appeals from a judgment of conviction for two counts of strangulation and a single count of misdemeanor battery, all as a habitual criminal pursuant to WIS. STAT. § 939.62(1) (2011-12).[1] He also appeals from an order denying postconviction relief.  Sease argues the additional strangulation count was added as retribution for his obtaining plea withdrawal in an earlier case that was based on the same course of criminal conduct.  He also argues the State failed to prove the applicability of the habitual criminality penalty enhancer at sentencing.  We conclude the State has rebutted any presumption of vindictive prosecution.  We also conclude Sease's admission on his trial date that he was a habitual criminal relieved the State of its obligation to prove that status at sentencing.  Accordingly, we affirm.

## BACKGROUND

¶2    Sease was charged in Fond du Lac County Circuit Court case No. 2011CF415 with second-degree sexual assault, aggravated battery, and strangulation, all as a habitual criminal.  Sease entered into a plea agreement with the State and pled guilty to the strangulation and battery offenses with the habitual criminality penalty enhancers.  In 2014, the circuit court granted Sease's motion for plea withdrawal, finding the plea was predicated on Sease's attorney's promise to support a claim of ineffective assistance of counsel if Sease should later wish to withdraw his pleas.  In 2015 the State sought to dismiss case No. 2011CF415 without prejudice, electing instead to file a superseding Complaint based on the same course of criminal conduct.  The court granted the motion.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3      The new Criminal Complaint, filed in connection with the present Fond du Lac County Circuit Court case number, reduced the severity of the battery charge to a misdemeanor offense, added two kidnapping counts, and split the strangulation charge into two separate counts. The factual allegations were the same as in the prior case: that on October 30, 2011, Sease, while heavily intoxicated, interrogated his then-girlfriend Jennifer[2] about his belief that she had been talking to another man. He met Jennifer at her residence in Menasha and transported her to his residence in Fond du Lac, slapping her and pulling her hair on the way. In Fond du Lac, Sease threatened to kill her, beat her with his fists and with a bottle, and repeatedly strangled her until she began to gag. Later, at a motel, Sease beat Jennifer again, at one point striking her so hard that she wondered if he had knocked her eye out of its socket. In the motel bathroom, Sease made Jennifer watch him strangle her in the mirror, where Jennifer saw that her own lips were turning purple. Jennifer further alleged that after Sease released her, he got on top of her and had sexual intercourse with her. Jennifer told police she did not consent to the intercourse, but was too afraid to tell Sease to stop.

¶4      Following a trial, a jury found Sease guilty of the two strangulation offenses and the battery. He was acquitted of sexual assault and the two kidnapping offenses. Sease was given the maximum sentences: two years on the misdemeanor battery conviction, bifurcated as eighteen months' initial confinement and six months' extended supervision; and ten years on each strangulation conviction, bifurcated as seven years' initial confinement and three years' extended supervision. The sentences were ordered to run consecutively.

---

[2] Consistent with the policy underlying WIS. STAT. RULE 809.86, we use a pseudonym when referring to the victim.

¶5     Sease then filed a postconviction motion asserting that his due process rights had been violated because the new charges were the result of vindictive prosecution.   He additionally argued he received constitutionally ineffective assistance from his trial counsel as a result of his attorney's failure to challenge the vindictive prosecution.   Finally, Sease argued the habitual criminality penalty enhancers were unlawfully applied to his convictions because his admission on the first day of trial to a prior qualifying felony was insufficient and because the State failed to otherwise prove the fact of his prior conviction at sentencing.  The circuit court rejected these arguments following a nonevidentiary hearing.  Sease now appeals.

## DISCUSSION

*I. Vindictive Prosecution*

¶6     Sease first argues that the new strangulation charge in this case was animated by a vindictive motive against Sease for exercising his right to withdraw his plea in case No. 2011CF415.[3]   The legal principles surrounding a claim of prosecutorial vindictiveness present questions of law that we review de novo. *State v. Cameron*, 2012 WI App 93, ¶11, 344 Wis. 2d 101, 820 N.W.2d 433. However, we review the circuit court's findings of fact regarding whether the defendant has established actual vindictiveness under the clearly erroneous standard. *Id.*

---

[3] We address only the additional strangulation charge as part of this argument.  Any assertion that the kidnapping charges were animated by prosecutorial vindictiveness was effectively rendered moot by his acquittal on those charges. *See State v. Fitzgerald*, 2019 WI 69, ¶21, 387 Wis. 2d 384, 929 N.W.2d 165.

4

¶7 "To establish a claim of prosecutorial vindictiveness, a defendant must show either a 'realistic likelihood of vindictiveness,' therefore raising a rebuttable presumption of vindictiveness, or actual vindictiveness." *State v. Williams*, 2004 WI App 56, ¶43, 270 Wis. 2d 761, 677 N.W.2d 691 (quoting *State v. Johnson*, 2000 WI 12, 17, 232 Wis. 2d 679, 605 N.W.2d 846). Actual vindictiveness requires the presentation of objective evidence that the prosecutor acted to punish the defendant for standing on his or her legal rights. *Id.*

¶8 The State argues Sease has forfeited his prosecutorial vindictiveness claim by failing to raise it prior to trial. Sease responds that he has not forfeited his claim, and in any event, his brief posits ineffective assistance of counsel or plain error as alternative means of reaching the validity of the State's charging decision. Even assuming Sease's claim was properly preserved, however, we conclude that Sease has failed to demonstrate prosecutorial vindictiveness. This conclusion necessarily constitutes a rejection of Sease's plain error and ineffective-assistance-of-counsel arguments. *See State v. Sanders*, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16 (observing counsel does not perform deficiently by failing to bring a meritless motion).

¶9 First, Sease contends he has established prosecutorial vindictiveness under *Blackledge v. Perry*, 417 U.S. 21 (1974). *Blackledge* recognized that a convicted person "is entitled to pursue his statutory right to a trial de novo, without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Id.* at 28. Accordingly, when a prosecutor elects to pursue additional or increased charges following a defendant's pursuit of postconviction relief, and those additional or increased charges arose out of the same criminal course of conduct that was the subject of the original charge, we

indulge a rebuttable presumption that the additional or increased charges were retribution for the defendant's exercise of his or her rights. *See Williams*, 270 Wis. 2d 761, ¶45.

¶10 The presumption is rebuttable because the successful invocation of postconviction or appellate rights usually returns the case to a pretrial posture, thereby permitting the defendant and the State to once again engage in the give-and-take of plea negotiations. When we review a claim of vindictive prosecution, we "must be mindful that a prosecutor has great discretion in charging decisions and generally answers to the public, not the courts, for those decisions." *Cameron*, 344 Wis. 2d 101, ¶12. A prosecutor's initial charging decision may not reflect the extent to which an individual is legitimately subject to prosecution, and the prosecutor must remain free to exercise broad discretion in determining which charges properly reflect society's interests. *Id.*, ¶13.

¶11 Assuming without deciding that Sease has established a presumption of vindictiveness here, the difficulty with Sease's position is that he fails to make any allowance for the State's opportunity to rebut that presumption by showing the additional or increased charges were brought about by legitimate considerations and not animus or revenge. Rather, the logical endpoint of his argument is that once the State negotiated the original plea agreement, it was forever bound to the charges that formed the basis for that agreement, even if his pleas were later deemed invalid.

¶12 We reject Sease's argument and conclude that the evidence presented by the State in connection with Sease's postconviction motion effectively rebutted any presumption that the new charges were retribution for Sease's exercise of his postconviction rights. The prosecutor's affidavit explained

that prior to plea withdrawal, the original prosecutor left the district attorney's office. New prosecutors had been assigned to the case and had reviewed the case file in No. 2011CF415. They believed the habitual criminality penalty enhancers had been incorrectly charged, but could not be corrected because a plea had been taken.[4] Additionally, one of the prosecutors strongly disagreed with the way the case had been initially charged. And, after receiving additional medical evidence, the prosecutors decided that they could not prove the aggravated battery charge.

¶13 After Sease successfully sought plea withdrawal, the prosecutors began discussing ways to fix the issues with the Criminal Complaint. They decided to make a new plea offer dated April 1, 2015, in which Deputy District Attorney Dennis Krueger was forthright about his belief that the case was "grossly and incorrectly charged." He acknowledged that the existing charges were for second-degree sexual assault, aggravated battery, and strangulation, and he argued that the facts supported additional charges, including kidnapping. The offer also acknowledged the need for finality and that the district attorney's office was still awaiting medical records that "may further clarify whether the substantial battery charges can be proven."

¶14 The State's new offer was based on the then-existing charges: Sease would plead to second-degree sexual assault without the habitual criminality penalty enhancer, and the State would dismiss the battery charge outright. The strangulation charge would be dismissed and read in, with the parties free to argue at sentencing. Sease was given until April 10th to accept—otherwise the

---

[4] It is unclear what, precisely, the prosecutors believed was the defect in the charging. However, as we note later when discussing the penalty enhancers, it is clear based on the transcript of the plea colloquy that Sease admitted to the fact of a qualifying prior conviction.

prosecutors would "consider the option of dismissing the case and reissuing the proper charges and any repeater enhancers that apply."

¶15    Sease did not accept the State's offer, and this case was filed on April 16, 2015.   In discussing the new strangulation charge specifically, the prosecutor averred that its inclusion was motivated by the fact that there were two "distinct" and "very clear incidents," which could cause a potential jury-unanimity issue if the case went to trial.   The prosecutors decided that adding the second strangulation count solved the potential issue and was consistent with the facts of the case.   They also concluded that the aggravated battery charge was unsupported and amended it to misdemeanor battery.   According to the affidavit, the goal of the prosecution was not to punish Sease for his postconviction motion, but rather to secure a conviction on the second-degree sexual assault charge and "get an outcome that was at least equal to what the defendant had previously received."

¶16    Sease correctly observes that the mere fact that new prosecutors were put on his case does not insulate the State against claims of prosecutorial vindictiveness.   *See* ***Thigpen v. Roberts***, 468 U.S. 27, 31 (1984).   But the Record demonstrates the prosecutors here had no retaliatory motive as their initial plea offer adhered to the three charges they plainly believed were insufficient to reflect Sease's criminal liability.   It was only after Sease rejected their initial offer following plea withdrawal that the prosecutors sought the additional strangulation charge.   Sease had ample notice that they would seek additional charges if he rejected the plea offer; they explicitly told him as much in the offer itself.   And it is well-established that there is no presumption of prosecutorial vindictiveness arising from a prosecutor's threat to add charges if a defendant refuses to plead guilty.   *See* ***Johnson***, 232 Wis. 2d 679, ¶51.

¶17    We perceive the crux of Sease's prosecutorial vindictiveness claim to be that the foregoing analysis should not apply when the State makes a plea offer that is materially worse than the plea offer the defendant initially accepted before having his or her conviction overturned. Sease notes that the prosecutors' new plea offer, which required him to plead guilty to second-degree sexual assault, exposed Sease to an additional two years of initial confinement and seven years of extended supervision. And, though Sease acknowledges that a "poor offer after obtaining post-conviction relief would not be vindictive prosecution on its own[,]" he argues the circumstances of this case demonstrate actual vindictiveness.

¶18    We will analyze actual vindictiveness momentarily, but pause here to note that it remains an open question whether "the law of vindictive prosecution applies to less favorable plea offers made after an original conviction is reversed and remanded for a new trial." *State v. Tkacz*, 2002 WI App 281, ¶27, 258 Wis. 2d 611, 654 N.W.2d 37. Strangely, neither Sease nor the State cites to *Tkacz*, wherein the court held that, even assuming a less favorable plea offer could constitute vindictive prosecution, Tkacz had failed to demonstrate a reasonable likelihood of vindictiveness because he had not alleged the prosecutor added charges or "sought a higher sentence than he received at the first trial[.]" *Id.*, ¶30.

¶19    We similarly conclude that even if such a claim is cognizable, any presumption of prosecutorial vindictiveness has been rebutted. Again, in making their postwithdrawal plea offer, the prosecutors adhered to the original prosecutor's charging decisions—decisions that they plainly thought were too lenient. Their request for Sease to plead guilty to the second-degree sexual assault charge may have arguably increased his maximum exposure, but we cannot ignore the context of the offer. After Sease entered his pleas, the circuit court imposed seven years' initial confinement and three years' extended supervision on the

strangulation conviction, with a consecutive fifteen years' initial confinement and six years' extended supervision on the aggravated battery charge.[5] The new plea offer had to chart a perilous course: the prosecutors plainly wanted to be faithful to the prosecutor's prior decisions in the case, even though they believed additional charges were warranted, Sease's conduct justified a serious penalty, and there were arguable proof problems vis-à-vis the aggravated battery charge.

¶20     Turning to actual vindictiveness, the appellate Record here is entirely lacking in objective evidence that the prosecutors sought to punish Sease for enforcing his constitutional right to enter a knowing, intelligent, and voluntary plea. Sease argues he has demonstrated actual vindictiveness because at the hearing on the State's motion to dismiss, the prosecutor acknowledged that the underlying factual allegations had not changed, and "this was a case that was resolved and then became unresolved …[.]" But the assistant district attorney that appeared at that hearing was not one of the assistant district attorneys handling the case, and he then told the court that he could not explain the new charging decision.[6] He stated, "I would just be making assumptions, to be honest with you." This exchange does not demonstrate actual vindictiveness.

---

[5] These appear to have been the maximum sentences allowed by law considering the habitual criminality penalty enhancer.

[6] Ironically, immediately after relying on the statements of the fill-in assistant district attorney who acknowledged he could only offer speculation regarding the chagrining decision, Sease levies criticism at the State for relying on "another ADA's speculation who was not involved until postconviction briefing."

## II. Habitual Criminality Penalty Enhancer

¶21 Sease also argues that he is unlawfully subject to habitual criminality penalty enhancers for the crimes of conviction. "A defendant is subject to an enhanced penalty for habitual criminality only if (1) the defendant personally admits to qualifying prior convictions, or (2) the existence of qualifying prior convictions is proved by the state." *State v. Saunders*, 2002 WI 107, ¶19, 255 Wis. 2d 589, 649 N.W.2d 263 (citing WIS. STAT. § 973.12(1)). We review de novo whether the requirements of § 973.12(1) have been satisfied. *State v. Liebnitz*, 231 Wis. 2d 272, 283, 603 N.W.2d 208 (1999).

¶22 We agree with the State that Sease stipulated to the existence of a prior qualifying conviction, a 2005 conviction for delivering cocaine. Early on, during the first day of trial in this case, the following exchange occurred:

> [DEFENSE COUNSEL]: Your Honor, in regards to the repeater allegations, we will stipulate that if he is convicted on any of the counts, that … he does meet the requirements for a repeater, and we'd ask that the jury not be informed of his repeater status.
>
> THE COURT: What's the State's position?
>
> [THE PROSECUTOR]: Your honor, I would agree with it if they're stipulating, so I believe it's appropriate not to read it.
>
> THE COURT: Mr. Sease, do you understand that there will not be a requirement for the prosecutor, during the course of the trial or before sentencing, to actually prove that you were a repeater under Wisconsin law?
>
> MR. SEASE: Yes, sir.

The court then stated that, pursuant to the agreement and stipulation, there would be no reference to Sease's status as a repeater at trial.

11

¶23    As we noted in a prior order in connection with Sease's dismissed no-merit appeal, this cautionary discussion was probably unnecessary as repeater status is not normally determined by a jury, but rather is a matter for the circuit court at sentencing.  Nonetheless, during the course of the discussion, Sease did acknowledge his attorney's stipulation and admit that he had a prior qualifying offense for purposes of the repeater allegations.

¶24    Sease contends this stipulation was ineffective under *Saunders*, which set forth the black-letter law that a stipulation by a defendant's attorney is insufficient, and a "'direct and specific admission by the defendant'" is required. *Saunders*, 255 Wis. 2d 589, ¶22 (citation omitted).  *Saunders* also establishes that "an admission by the defendant must contain specific reference to the date of the conviction and any period of incarceration if relevant to applying § 939.62." *Saunders*, 255 Wis. 2d 589, ¶22.

¶25    The State does not contend the pretrial discussion here satisfied this requirement.  Rather, the State argues Sease was certainly aware of the repeater allegations throughout these proceedings and those in case No. 2011CF415. Notably, in No. 2011CF415, Sease pled guilty to two offenses based on this same course of conduct, which included the habitual criminality penalty enhancers. During the plea colloquy in that case, he personally acknowledged that he had a prior felony conviction during the relevant timeframe.  Sease now claims that the withdrawal of those pleas precludes the State from relying on any aspect of that plea hearing as it pertains to Sease's admission of a prior qualifying felony.

¶26    As the circuit court recognized (at least implicitly) when addressing Sease's postconviction motion, this case appears to fall somewhere between *Saunders*'s dictates.  During the trial discussion in this case, the court did not

specify the date of prior conviction nor any relevant periods of confinement for purposes of tolling the look-back period within WIS. STAT. § 939.62, as required by *Saunders*. However, to hold that Sease's admission in this case was inadequate would ignore the plea proceedings in No. 2011CF415, which led to the trial in this case.

¶27 *Saunders* was not a case involving prior guilty pleas. And *Saunders* acknowledged the case law holding that a defendant who pleads guilty or no contest "can be held to have admitted to a prior conviction for enhancement purposes, even if the defendant never expressly admitted to the conviction." *Saunders*, 255 Wis. 2d 589, ¶22 (citing *Liebnitz*, 231 Wis. 2d at 286; *State v. Rachwal*, 159 Wis. 2d 494, 509, 465 N.W.2d 490 (1991)). Though Sease's pleas in No. 2011CF415 were subsequently withdrawn, they were not withdrawn based on any claimed misunderstanding about his prior felony conviction or his status as a habitual criminal—points Sease was specifically asked about by the circuit court in connection with his entering those pleas. The court's postconviction decision in this appeal discusses the considerable history of the case, the focus being specifically Sease's understanding of the nature of the repeater allegations.

¶28 Under these circumstances, we hold that it was not necessary for the circuit court to again require Sease to explicitly confirm the date of his prior conviction and any relevant periods of confinement. Sease relieved the State of its responsibility to prove his status as a repeater by his acknowledgment on the trial date. Having concluded that Sease admitted to the relevant prior conviction and his status as a habitual criminal, it is unnecessary for us to also consider whether the State's proof was sufficient.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.